UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-00669-FDW
(3:20-cr-00276-FDW-DSC)

| | |
|---|---|
| WARREN EUGENE HINES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.   BACKGROUND**

In December 2019, Charlotte-Mecklenburg Police Officers went to Petitioner's home after a report of shots fired. [CR Doc. 33 at ¶ 23: Presentence Investigation Report (PSR)]. Petitioner reported to police that he returned home at 3:15 a.m. and, as he was walking toward his garage, saw someone standing behind a bush next to the garage door. [Id.]. According to Petitioner, the person fired two shots at Petitioner as Petitioner ran into the garage. Petitioner told police he did not have a firearm and did not return fire. [Id.]. Neighbors said they saw a Black Dodge Charger circling near Petitioner's home earlier that night and surveillance cameras in the area showed two

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:23-cv-00669-FDW, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:20-cr-00276-FDW-DSC.

people approach Petitioner's house and a Dodge Charger pull into the street at the time of the shooting. [Id.]. Petitioner's mother said she heard three to four gunshots outside before Petitioner ran inside and asked her to call the police. [Id.].

Officers found a spent projectile in the window of a van parked in the driveway. [Id. at ¶ 24]. Two additional spent projectiles were lodged in a bag of charcoal inside the garage. Officers also found a spent casing in the grass on the side of the driveway. Officers obtained a search warrant after Petitioner refused to allow them to search his home. [Id. at ¶ 25]. Petitioner then admitted that he had returned fire with a .28 caliber firearm that he had bought on the street. He also admitted to having three more firearms in his home. [Id.]. During a search of the home, officers found a kilogram of suspected cocaine under a mattress, an empty kilogram wrapper, 66 grams of heroin, 216 grams of cocaine powder, 120 grams of crack cocaine, drug ledgers, digital scales, and over $29,700 in cash. [Id. at ¶ 26]. Officers also found the four firearms that Petitioner had admitted to having, over 240 rounds of ammunition, and two 30-round magazines. [Id.]. Officers also found a fifth firearm in Petitioner's storage unit. [Id. at ¶ 31].

In August 2020, Petitioner was charged in a Bill of Indictment with one count of cocaine trafficking conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); one count of possession with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Two); and one count of using and discharging a firearm in furtherance of a drug trafficking offense in violation 18 U.S.C. § 924(c)(1)(A)(iii) (Count Three). [CR Doc. 1: Bill of Indictment]. The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to guilty to Counts One and Two and the Government agreed to dismiss Count Three. [CR Doc. 23: Plea Agreement]. As part of the plea agreement, the parties agreed to jointly recommend that the amount of cocaine that was reasonably foreseeable to the Petitioner was at

least 15 but less than 50 kilograms of cocaine and a base offense level of 32. [Id. at ¶ 8]. Petitioner also stipulated that there was a factual basis for his guilty plea and that he had read, understood, and agreed with the factual basis. [Id. at ¶ 11]. Petitioner waived his rights to contest his conviction and/or sentence through appeal or post-conviction action, including pursuant 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 16-17]. Petitioner also acknowledged that there were "no agreements, representations, or understandings between the parties" other than those included in the written plea agreement or as noticed at the plea hearing and contained in a separate written document. [Id. at ¶ 23].

The magistrate judge conducted a Rule 11 hearing, where Petitioner pleaded guilty in accordance with the plea agreement. [CR Doc. 28: Acceptance and Entry of Guilty Plea]. The charges and penalties were explained to Petitioner, and he agreed that he fully understood them. [Id. at 1]. Petitioner confirmed that he had discussed the Sentencing Guidelines with his attorney, that the Court would not be able to determine his guideline range until after a presentence report had been prepared, and that he could receive a sentence higher or lower than the guideline range. [Id. at 2]. Petitioner attested that he was "in fact" guilty of the charges. [Id. at 3]. The Government summarized the terms of the plea agreement, and Petitioner affirmed that he understood and agreed to those terms, including the waiver of his right to challenge his conviction and sentence on direct appeal or in a post-conviction proceeding. [Id.]. Petitioner also attested that no one had threatened, intimidated, or forced him to plead guilty, nor had anyone made him a promise of leniency or a light sentence, outside the terms of the plea agreement, to induce him to plead guilty. [Id.]. Petitioner confirmed that he had had sufficient time to discuss any possible defenses with his attorney, and he was satisfied with her services. [Id.]. The magistrate judge accepted Petitioner's guilty plea, finding that it was knowing and voluntary. [Id. at 4].

3

Before sentencing, a probation officer prepared a PSR. [CR Doc. 33]. The probation officer recommended a base offense level of 32 based on a total converted drug weight of 8,235.10 kg, which included 39.00 kilograms of cocaine, 107.0 gm of crack cocaine, and 53.0 gm of heroin. [Id. at ¶ 38]. The probation officer also recommended a two-level increase for possession of a firearm, a two-level drug premises enhancement, and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 33. [Id. at ¶¶ 39-40, 46-47]. With a criminal history category of I, the guidelines recommended a term of imprisonment of 135 to 168 months. [Id. at ¶¶ 53, 81].

Petitioner appeared for a sentencing hearing on September 28, 2022, but requested a continuance. [CR Doc. 47: Continuance Tr.]. Petitioner's attorney told the Court that there were "a couple of things" that she "really need[ed] to go back over with [her] client," including "reasons why he may not qualify" for the "safety valve."[2] [Id. at 2, 4]. Counsel "wanted him to make sure he understands everything." [Id. at 4]. The Court granted the continuance, and the sentencing hearing was reset for October 26, 2022. [9/28/2022 Minute Entry; 9/30/2022 Notice of Hearing].

At the sentencing hearing, Petitioner confirmed that he had answered the questions at the plea hearing truthfully, that his answers would be the same if the Court asked him the questions again, and that he was guilty of the offenses. [CR Doc. 48 at 2-4 (Sentencing Tr.)]. The Court affirmed the magistrate judge's acceptance of the Petitioner's guilty plea. [Id. at 5]. Petitioner testified that he had read the presentence report and reviewed it with his attorney, that she had answered all his questions, and that he understood it. [Id. at 5-6]. The Court adopted the PSR

---

[2] The safety valve allows the Court to sentence a defendant below an otherwise applicable statutory mandatory-minimum sentence if certain conditions are met. See 18 U.S.C. § 3553(f). A defendant who uses "violence or credible threats of violence" or possesses "a firearm or other dangerous weapon … in connection with the offense" does not qualify for the safety valve. Id. § 3553(f)(2).

without change. [Id. at 6]. Petitioner's attorney told the Court that he "wanted [her] to argue to you…about the safety valve," but she understood the "presence of guns" was an issue. [Id. at 7]. Petitioner requested a downward variance, arguing that he was a first-time offender, admitted his conduct, cared about and had given back to his community, had been very involved in his children's lives, and had been his elderly mother's caretaker. [Id. at 7-15, 32]. Petitioner allocuted, stating he had learned from his bad decisions and wanted the opportunity to support his children, fiancé, and mother. [Id. at 16-17]. Petitioner also questioned why he did not qualify for the safety valve. [Id. at 19-20]. The probation officer and the Court explained that Petitioner did not qualify because he had a firearm. [Id.]. Petitioner responded, "Okay. Thank you." [Id. at 20].

The Government argued that it had given the Petitioner credit for his honesty at the time of his arrest and his lack of criminal history by agreeing to dismiss the firearm count, which carried a mandatory minimum consecutive ten-year sentence, and by agreeing to a sentence at the bottom of the guideline range. [Id. at 25-29, 31]. The Government also noted that Petitioner had five firearms and had admitted to trafficking drugs for a very long time. [Id. at 27-29]. Over the Government's objection, the Court varied downward, sentencing Petitioner to a term of imprisonment of 123 months. [Id. at 39-40]. Judgment on Petitioner's conviction was entered on October 31, 2022. [CR Doc. 37: Judgment]. Petitioner did not appeal.

Petitioner timely filed the pending motion to vacate. [CV Doc. 1]. Petitioner argues that he received ineffective assistance of counsel because his attorney (1) failed to get him a safety valve sentence as promised, (2) failed to argue that Petitioner could not be convicted for conspiracy without co-conspirators; (3) failed to object to the drug weight and other aspects of the PSR and (4) failed to argue he should receive a shorter sentence due to unwarranted sentencing disparities.

[Id. at 4-5, 7-8]. Petitioner does not state what relief he seeks. [Id. at 12]. The Government responded, and Petitioner replied.[3] [CV Docs. 4, 5].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"

---

[3] The Court cannot and does not consider any claim raised for the first time by Petitioner in his reply brief, which was filed months after the expiration of the one-year limitations period under the AEDPA. [See CV Doc. 5]. This includes, but is not limited to, Petitioner's claims that the District Court erred in failing to apply the safety valve to reduce Petitioner's sentence and in finding the drug quantity, that his rights under the Double Jeopardy Clause were violated., and that he received ineffective assistance because his attorney did not object to the drug premises or firearm enhancements. [See id. at 7-0, 11].

6

Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The petitioner's "subjective preferences" are not dispositive, but rather the test is "whether proceeding to trial would have been objectively reasonable in light of all of the facts," United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012), and whether the petitioner has shown that there is "contemporaneous evidence" supporting his expressed preferences, Lee v. United States, 137 S.Ct. 1958, 1967 (2017).

In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### A. Conspiracy Charge

Petitioner argues his attorney was ineffective for failing to challenge his conspiracy charge because he "can't conspire by [him]self" and no co-conspirators were charged in the Bill of Indictment. Count One charged that Petitioner "conspire[d] and agree[d] with other persons, known and unknown … to distribute" cocaine. [CR Doc. 1 at 1]. The Government was not required to identify the persons with whom Petitioner conspired. See United States v. Payton, 328 F.3d 910, 911 (7th Cir. 2003) ("[T]he government need not prove *with whom* a defendant

8

conspired, only that he joined the agreement."); United States v. Womack, 191 F.3d 879, 885 (8th Cir. 1999) (holding the fact that no other co-conspirators are named in an indictment "does not preclude a finding of a conspiracy"). Moreover, Petitioner, admitted to buying cocaine from a supplier for $32,000 a kilogram of cocaine a day. [CR Doc. 33 at ¶¶ 20, 29; see CR Doc. 48 at 7, 21, 28-29]. He also admitted to discharging one of the firearms he possessed to protect his drugs and drug proceeds. [Id. at ¶ 19]. There was more than enough evidence to corroborate Petitioner's involvement in a drug trafficking conspiracy. Law enforcement found over a kilogram of cocaine, a kilogram wrapper, 120 grams of crack cocaine, 66 grams of heroin, drug ledgers, digital scales, and almost $30,000 in cash at Petitioner's home. [Id. at ¶¶ 26-27, 29]. Officers also found four firearms, magazines, and ammunition at Petitioner's home and an additional firearm in his storage unit. [Id. at ¶¶ 26, 31]. As such, Petitioner has not shown that his attorney was deficient for failing to raise a meritless challenge.

Petitioner has also failed to allege or show prejudice from his attorney's failure to challenge the conspiracy charge. He does not allege that but for counsel's failure there is a reasonable probability that he would have proceeded to trial. See Meyer, 506 F.3d at 369. Moreover, any such claim would not be objectively reasonable in any event. See Fugit, 703 F.3d at 260. The Government agreed to dismiss the firearm charge, which carried a mandatory minimum 10-year consecutive sentence, because Petitioner pleaded guilty. And his guilty plea allowed counsel to argue for and obtain a downward variance. Because Petitioner has not shown deficient performance or prejudice, the Court will dismiss this claim.

     **B.**     **Safety Valve**

Petitioner claims that his attorney failed to "get" him the safety valve adjustment as promised. [CV Doc. 1 at 4]. The record, however, refutes Petitioner's claim that his attorney

9

made any such promise.  At the first, continued sentencing hearing, on September 28, 2022, Petitioner's attorney asked for a continuance to allow more time to explain to Petitioner, among other things, why he "may not qualify" for the safety valve.  Then, at the sentencing hearing a month later, Petitioner's attorney acknowledged that Petitioner wanted her to raise the safety valve, but that she understood that his possession of a firearm was problematic.  Petitioner himself also raised the issue at his sentencing hearing, asking the Court why he did not qualify given his lack of criminal history.  He accepted the explanation of the probation officer and the Court that he did not qualify due to the presence of the firearm.

Petitioner has also failed to show prejudice on this issue.  Contrary to Petitioner's argument [CV Doc. 5 at 6], he does not qualify for a reduced sentence under the safety valve.  Petitioner admitted to having the firearm on his person prior to discharging it, to discharging it to protect his drugs and drug proceeds that were inside his home, and to hiding the firearm in a backpack prior to law enforcement arriving.  [CR Doc. 33 at ¶ 19].  Thus, it was not "clearly improbable" that the firearm he fired at his home on December 24, 2019, was not possessed in connection with the drug conspiracy.  [See CV Doc. 5 at 6].

He also does not contend that but for his attorney's alleged promise that he would have proceeded to trial.  And such a decision would not be objectively reasonable in any event given the benefits Petitioner obtained from the plea agreement, and the fact that his guideline range exceeded the ten-year statutory mandatory minimum sentence.  See Fugit, 703 F.3d at 260.

### C.      Ineffective Assistance at Sentencing

Petitioner contends that his attorney was ineffective for failing to object to the drug weight in the PSR.  Petitioner argues that he should only have been sentenced for the actual drugs the officers found.  [CV Doc. 1 at 7].  Petitioner was, however, responsible for his relevant conduct,

which included the cocaine that was reasonably foreseeable to him as part of the conspiracy. See U.S.S.G. § 1B1.1. Petitioner admitted to selling a kilogram of cocaine a week, and the conspiracy was alleged to have operated throughout 2019. [CR Doc. 33 at ¶ 29; CR Doc. 1 at 1]. And, as part of the plead agreement, Petitioner agreed that he was responsible for at least 15, but less than 50, kilograms of cocaine and that a base offense level of 32 applied. [CR Doc. 23 at ¶ 8]. The Court, consistent with the PSR and plea agreement, applied a base offense level of 32. [CR Doc. 48 at 6]. As such, Petitioner's attorney was not ineffective for not challenging the drug weight, which would have undermined and risked withdrawal of the plea agreement, leaving Petitioner to face a mandatory-minimum 10-year consecutive sentence on the firearm charge. Petitioner also failed to allege or show prejudice from his attorney's failure to raise this objection. The Court, therefore, will dismiss this claim.

The Court will also dismiss Petitioner's claims based on his attorney's failure to object to the PSR placing a "public-safety factor" on him and failure to argue that he had withdrawn from selling drugs; alleged sentencing disparities due to his being a first-time non-violent offender; his "never receiv[ing] exculpatory information;" and that his sentence was substantively unreasonable.[4] Petitioner's vague and conclusory assertions on these issues are completely insufficient to establish a right to relief under § 2255 and the Court dismisses them on this ground alone.[5] See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). Moreover, Petitioner waived all pre-plea ineffective assistance counsel claims when he knowingly and voluntarily pleaded

---

[4] Petitioner's claim that his attorney was ineffective for failing to have his sister's name corrected on the PSR states no basis for relief under § 2255 and will be dismissed.

[5] The Court notes that Petitioner, in his reply, provided some additional context and argument for some of these claims. They are meritless, however, and will be dismissed.

11

guilty, see Fields, 956 F.2d at 1294-96, and failed to show prejudice from the ineffective assistance claims in any event, see Strickland, 466 U.S. at 687-88. Petitioner also waived his right to challenge his conviction and sentence as part of his plea agreement. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Finally, Petitioner procedurally defaulted many of these claims, including his claim that his sentence is substantively unreasonable, by failing to raise them on direct appeal. See United States v. Linder, 552 F.3d 391, 397 (4th Cir. 2009). These claims, therefore, will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 motion to vacate.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: April 17, 2024

Frank D. Whitney
United States District Judge